IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CHARLES L. DYAS, JR., et al.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 08-0232-WS-M |
| | ) |
| **CITY OF FAIRHOPE, etc., et al.,** | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on the defendants' motion to dismiss. (Doc. 5). The parties have filed briefs in support of their respective positions, (Docs. 6, 22, 23), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion is due to be granted in part and denied in part.

**BACKGROUND**[1]

The plaintiffs own two parcels of property in Fairhope ("the Triangle" and "the Adjacent Property," collectively "the Property"), which they have tried several times to develop over the years. In 1998, the plaintiffs sued the City of Fairhope ("the City") and various city officials in connection with these efforts. In 2002, the plaintiffs agreed to dismiss their suit with prejudice after the City agreed to rezone the Property under a PUD category that would permit construction of a mixed-use neighborhood village center consistent with the City's comprehensive plan. The plaintiffs received the rezoning in December 2002 and dismissed their lawsuit with prejudice in January 2003. The Property remained undeveloped thereafter.

---

[1] The background material provided in text is drawn from the complaint, not from any agreed statement by the parties.

The City in October 2006 approved a similar PUD designation for an adjacent tract ("the Corte parcel"), in violation of the City's comprehensive plan (which forbade neighborhood village center PUDs in such close proximity) as well as assurances by the City and co-defendant Timothy Kant, the City's mayor. The PUD approved for the Corte parcel ("the Fly Creek Village PUD") was more favorable than that approved for the Property ("the Village North PUD") in several respects, including a single-tenant cap of 54,000 square feet, versus the 18,000 square-feet limit applicable to the Property.

In early 2007, the plaintiffs were contacted by a major grocery retailer about purchasing the Property. The retailer required a store of approximately 54,000 square feet. Kant assured the plaintiffs that he supported their request to amend the Village North PUD to allow a 54,000 square-foot building, and he represented that the City would approve the request, since it could not deny the plaintiffs what it had granted the Cortes. However, in December 2007 the City's planning and zoning commission rejected the proposed amendment. Kant, who sits on the commission, supported the rejection.

In 2006, the City began considering changes to the traffic flow around and between the Triangle and the Adjacent Property, which changes would negatively impact the Village North PUD. The most important of these changes would be to eliminate northbound traffic on Section Street (on which the village center was to face) or to restrict northbound traffic to a right (south) turn on Highway 98. The likely result of these changes would be to preclude installation of a traffic light at the corner of Section Street and Highway 98, which light would be important to handle traffic from a developed Property. Bids for this work were opened in February 2008, and the City approved these changes in March 2008. At about the same time, the City approved installation of a traffic light at the intersection of Highway 98 and Parker Road, which would facilitate traffic flow to the Corte parcel and likely preclude a similar light at the intersection of Highway 98 and Section Street.

The defendants' conduct destroyed the economic viability of the Village North

PUD and lowered the Property's fair market value.

The complaint asserts the following causes of action against the specified defendant:

- Count One        Breach of Contract           City
- Count Two        Equal Protection             City
- Count Three      Due Process                  City
- Count Four       Inverse Condemnation         City
- Count Five       Negligence                   City
- Count Six        Misrepresentation            Kant
- Count Seven      Conspiracy                   Kant

## DISCUSSION

In order to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must as a threshold matter provide "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2). *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* Thus, neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffices to satisfy Rule 8(a)(2). *Id.* at 1965. "Stated differently, the factual allegations in a complaint must 'posses enough heft' plausibly to suggest that the pleader is entitled to relief. ... Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitlement to relief."'" *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1966).

If, but only if, "a claim has been stated adequately [under Rule 8(a)(2)], it may be supported by showing any set of facts consistent with the complaint." *Twombly*, 127 S.

Ct. at 1969 (explaining *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  That is, "[a] motion to dismiss [for failure to state a claim] may be granted only when a defendant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Kirwin v. Price Communications Corp*., 391 F.3d 1323, 1325 (11th Cir. 2004) (internal quotes omitted).  "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and the exhibits attached thereto."  *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotes omitted).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995).  The Court's review on this motion to dismiss is similarly limited to those arguments the parties have expressly advanced.  Moreover, "a passing reference to an issue in a brief [is] insufficient to properly raise that issue," *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005), and the Court will not supply legal or analytical support the parties have declined to offer themselves.

**I.  Breach of Contract.**

Count One alleges that the plaintiffs agreed to dismiss their earlier lawsuit and that the City agreed to rezone the Property under a PUD category allowing construction of a neighborhood village center.  (Doc. 2 at 25, ¶ 54).  The complaint acknowledges that the City rezoned the Property and that the plaintiffs thereupon dismissed their lawsuit.  (*Id*. at 25-26, ¶ 55; *id*. at 12, ¶¶ 16-18).  The defendants argue that the complaint thereby "establish[es] that there was no breach by the City."  (Doc. 6 at 3).

The plaintiffs respond with several arguments.  First, they point out that the complaint also alleges that the contract included an agreement to install a traffic light at

the intersection of Section Street and Highway 98 and that this agreement has been violated. (Doc. 22 at 2).[2] The defendants, who do not address this allegation, have not shown that the plaintiffs cannot establish the existence of, and breach of, this agreement.

Second, the plaintiffs argue that, even if the City did perform its contractual obligation to rezone the Property so as to allow the Village North PUD, it breached its implied covenant of good faith and fair dealing by approving the competing Fly Creek Village PUD and by approving traffic modifications adversely affecting the Property. (Doc. 22 at 2-3). Count One alleges that this conduct breached the contract. (Doc. 2 at 26, ¶¶ 56-57).

The duty of good faith and fair dealing, which is implied in every contract, "provides that neither party will interfere with the rights of the others to receive the benefits of the agreement." *Hilley v. Allstate Insurance Co.*, 562 So. 2d 184, 190 (Ala. 1990). The defendants respond that the obligation of good faith and fair dealing cannot "'supply a term that adds something new or different to the rights and obligations to which the parties have expressly agreed or to vary clear contract terms.'" (Doc. 23 at 2 (quoting *Hilley*, 562 So. 2d at 190)). True enough, but the defendants have not explained how the plaintiffs' claim violates this principle. In *Hilley*, the insurance policy expressly provided that replacement cost benefits would not be paid until replacement was completed, and the plaintiffs could not invoke the duty of good faith and fair dealing to negate this explicit contract term. Here, there was no contract term expressly permitting the City to approve a competing PUD in violation of its comprehensive plan, or to alter traffic patterns to the plaintiffs' detriment. Nor is it facially obvious that an agreement to rezone property to support a neighborhood village center, in order to settle a lawsuit

---

[2]The plaintiffs in brief do not expressly identify this allegation, but they cite generally to "the litany of breaches detailed in" Count One. Count One includes the allegation of a breached agreement to install the traffic light. (Doc. 2 at 26, ¶ 57). This paragraph may or may not also allege an agreement not to make the changes the City approved in March 2008. (*Id.*).

challenging restrictions on that property's development, carries with it no implied covenant not to violate the City's own comprehensive plan by approving a competing center and not to choke off the development by altering traffic flow.  Equally ineffective is the defendants' unexplained ipse dixit that, due to the passage of time, the City's conduct did not deprive the plaintiffs of the benefit of the contract.  (Doc. 23 at 2).  On the argument and authority presented, the motion to dismiss Count One is due to be denied.

## II.  Equal Protection.

The complaint alleges that the City treated the plaintiffs less favorably than the Cortes by approving the Fly Creek Village PUD and by deciding to alter traffic flow around the Property.  (Doc. 2 at 28-29, ¶¶ 61-63).

The defendants first argue that the claim is deficient because the complaint fails to allege that the plaintiffs were treated differently from a similarly situated person, which in this case means the Property must be similarly situated to the Corte parcel.  (Doc. 6 at 4, 6).  The complaint asserts that the plaintiffs "have a constitutionally protected right to equal protection of the law to the same degree as all other similarly situated property owners," (Doc. 2 at 29, ¶ 62), but it does not expressly allege that the plaintiffs are similarly situated to the Cortes or that the Property is similarly situated to the Corte parcel.

While "the liberal notice pleading standards embodied in Federal Rule of Civil Procedure 8(a)(2) do not require that a plaintiff specifically plead every element of a cause of action [, ...] it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Roe v. Aware Woman Center for Choice, Inc*., 253 F.3d 678, 683 (11th Cir. 2001) (internal quotes omitted).  This remains so after *Twombly*. *Financial Security Assurance, Inc. v. Stephens, Inc*., 500 F.3d 1276, 1282-83 (11th Cir. 2007).  Thus, the absence of an explicit allegation that the Property is similarly situated to

the Corte parcel is inconsequential if the complaint contains material from which such an allegation may be inferred. Here, the complaint alleges that both tracts are over 100 acres, (Doc. 2, ¶¶ 1, 19); that they are located immediately adjacent to each other, (*id*., ¶¶ 6, 19); that both abut Highway 98, (*id*., ¶¶ 6, 19, 37, 50, 63); that both sought rezoning as a neighborhood village center PUD, (*id*., ¶¶ 12, 19); that both sought approval for an anchor store of 40,000 square feet or more, (*id*., ¶¶ 12, 20, 33); and that both sought approval for several hundred residential units. (*Id*., ¶¶ 12, 20).

The plaintiffs pointed out these allegations in their brief, (Doc. 22 at 4), and the defendants ignored them in their reply. Instead, they repeated their previous, unexplained argument that the Corte parcel cannot be similarly situated to the Property for the simple reason that the zoning decisions concerning them were made almost four years apart. (Doc. 6 at 6; Doc. 23 at 2-3). Without analysis or legal support, neither of which the defendants supply, the Court cannot accept this facially implausible argument.

The defendants note that the parcels, to be similarly situated, must be "prima facie identical in all relevant respects." (Doc. 6 at 4; Doc. 23 at 3). This may be the plaintiffs' proof burden, but the defendants have not shown that the complaint itself must address "all relevant respects," whatever they may be, on pain of dismissal. The only cases on which the defendants rely involved a post-trial review of all the evidence, *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006), and a complaint that affirmatively negated a showing the parcels were similarly situated. *Griffin Industries v. Irvin*, 496 F.3d 1189, 1205-06, 1207 (11th Cir. 2007). At any rate, the defendants have not identified a single "relevant respect" which the complaint inadequately addresses or reflects is not prima facie identical (other than the timing of the zoning decisions, which they have failed to show is a relevant respect).

The defendants also argue that the complaint fails to allege intentional discrimination. (Doc. 6 at 6). The plaintiffs concede that they are required to allege

purposeful discrimination,[3] but they insist they have done so. (Doc. 22 at 5). This assertion is unaccompanied by any argument or even quotation from the complaint. Instead, the plaintiffs, in their three-line treatment of the issue, content themselves with a string cite of paragraphs from the complaint. (*Id*.).

The only one of these fifteen paragraphs that references discrimination states the City's conduct has "the effect of selectively discriminating against the [plaintiffs] for no legitimate or rational governmental purpose." (Doc. 2, ¶ 61). An allegation of a discriminatory *effect*, however, neither directly nor inferentially alleges discriminatory *purpose*, because a discriminatory effect can, and often does, exist absent a discriminatory purpose. *See, e.g., Miller v. Johnson*, 515 U.S. 900, 916 (1995) ("[D]iscriminatory purpose ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects ....") (internal quotes omitted).

Paragraph 63 contains a listing of the ways the City disadvantaged the plaintiffs vis-a-vis the Cortes. The concluding item is that "the City has undertaken efforts to improve the flow of traffic around the Fly Creek Village PUD while going to extraordinary lengths to alter the flow of traffic around the Village North PUD in a manner calculated to adversely affect it." (Doc. 2, ¶ 63). Conduct is "calculated" when it is "planned or contrived to accomplish a purpose," and synonyms include "deliberate" and "intended." Merriam Webster's Collegiate Dictionary 161 (10th ed. 1994). The Court concludes that paragraph 63 adequately alleges that the City's changes to traffic

---

[3]*See, e.g., Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996) ("In order to prevail on an equal protection claim based upon the [unequal] application of a facially neutral statute, it must be established that: (1) the plaintiff was treated differently than similarly situated persons; and (2) the defendant unequally applied the facially neutral statute for the purpose of discriminating against the plaintiff."); *accord Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1045 (11th Cir. 2008).

flow were undertaken with a discriminatory purpose as defined in *Miller* and like cases.

The remaining paragraphs cited by the plaintiffs address their resistance to and frustration with the City's decisions, the absence of any legitimate reason for the decisions, and the City's awareness that its decisions would hurt the Property. They do not, however, allege or perceptibly suggest that the City's conduct with respect to its rezoning decisions were influenced by a desire to adversely affect the plaintiffs or the Property, in isolation or vis-a-vis the Cortes or the Corte parcel.

The complaint alleges that the City's conduct violated the Alabama Constitution as well as the United States Constitution. (Doc. 2, ¶ 63). The defendants move for dismissal of the state claim on the grounds the complaint fails to identify the specific provision of the Alabama Constitution providing for equal protection. (Doc. 6 at 8). They cite no authority for the proposition that a complaint must cite the constitutional provisions on which it rests or be subject to dismissal. To the extent the plaintiffs mean to suggest there is no equal protection aspect to the Alabama Constitution, this appears to be a subject of some debate.[4] More fundamentally, however, it is the defendants' burden to show the legal impossibility of an equal protection claim under state law,[5] and they cannot meet that burden simply by demanding that the plaintiffs prove the existence of such a claim. The plaintiffs' silence does not, as the defendants assume, (Doc. 23 at 4), constitute an abandonment of the claim or relieve the defendants of their burden.

---

[4]*Compare Ex parte Melof*, 735 So. 2d 1172, 1181 (Ala. 1999) ("[W]e hold that Alabama has no such 'equal-protection provision ....'") *with Marsh v. Green*, 782 So. 2d 223, 236 n.3 (Ala. 2000) (Cook, J., concurring in part and dissenting in part) (questioning whether this portion of *Melof* garnered sufficient votes to constitute a holding).

[5]*E.g., Kirwin*, 391 F.3d at 1325 ("A motion to dismiss [for failure to state a claim] may be granted *only when a defendant demonstrates* beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (emphasis added) (internal quotes omitted); *Beck v. Deloitte & Touche*, 144 F.3d 732, 735-36 (11th Cir. 1998) ("In seeking dismissal for failure to state a viable claim, *a defendant thus bears the very high burden ....*") (emphasis added) (internal quotes omitted).

The defendants also argue that the complaint fails to allege that the plaintiffs' state rights to equal protection were violated. (Doc. 6 at 8). This is plainly incorrect, as the complaint alleges that the City's conduct "violated the [plaintiffs'] right to equal protection as guaranteed by the Alabama Constitution of 1901 ...." (Doc. 2, ¶ 63).

Finally, the defendants incorporate their previous arguments concerning deficiencies in the pleading of the federal equal protection claim. (Doc. 6 at 8). Because the defendants have not identified the elements of an equal protection claim under state law, the Court cannot evaluate whether the complaint adequately alleges them.

On the argument and authority presented, the motion to dismiss Count Two is due to be granted to the extent the claim is based on discriminatory zoning decisions challenged under the United States Constitution. In all other respects, the motion is due to be denied.

### III.  Due Process.

The complaint alleges that the City's approval of the Fly Creek Village PUD, and its approval of traffic flow changes, violated the plaintiff's state and federal rights to due process. (Doc. 2, ¶¶ 65-70). Although the complaint does not so state, the plaintiffs confirm that their claim is limited to one for denial of substantive due process, not procedural due process. (Doc. 22 at 5-6).

The defendants first argue that property rights are creatures of state law and that infringements on state-created rights are protected only by procedural due process, not substantive due process. (Doc. 6 at 9-10). The plaintiffs point out an important qualifier on this general rule, (Doc. 22 at 5-6): "Where an individual's state-created rights are infringed by 'legislative act,' the substantive component of the Due Process Clause generally protects him from arbitrary and irrational action by the government." *Lewis v. Brown*, 409 F.3d 1271, 273 (11th Cir. 2005). The defendants ignored this principle in their reply brief. Because they have not argued, much less shown, that the acts of the City

-10-

were non-legislative, they cannot obtain dismissal on this ground.

The defendants next argue that a substantive due process claim cannot be based on the approval of a zoning change with respect to property other than the plaintiffs' own or on traffic changes outside the plaintiffs' property. (Doc. 6 at 10; Doc. 23 at 4). This argument is expressed as an ipse dixit, unaccompanied by analysis or authority. As such, it cannot carry the defendants' burden on motion to dismiss.

The defendants argue that Count Three "does nothing more than restate [the plaintiffs'] claim for breach of contract." (Doc. 6 at 11). While it is true that "a simple breach of contract does not rise to the level of a constitutional violation," *Medical Laundry Services v. Board of Trustees*, 906 F.2d 571, 573 n.2 (11th Cir. 1990), this is not to say that conduct breaching a contract cannot also violate the Constitution. Nor does Count Three simply restate Count One; on the contrary, it alleges that the City's decisions were arbitrary and capricious, lacked any rational basis, and were unrelated to any legitimate government purpose. (Doc. 2, ¶¶ 67-69). The defendants have not explained how these claim-specific allegations could render Count Three indistinguishable from Count One.

In their reply brief, the defendants for the first time argue that the plaintiffs "cannot show" the absence of any rational basis for the City's actions. (Doc. 23 at 5). This argument comes too late to be considered,[6] but in any event it misses the mark; the complaint need not "show" the absence of a rational basis but merely allege it. The complaint should provide enough factual material to render the assertion plausible under *Twombly*, and should not provide factual material that negates the allegation, but the defendants do not assert that either of these circumstances exists.

Count Three seeks an award of punitive damages under 42 U.S.C. § 1983. (Doc. 2, ¶ 70.a). The defendants point out that punitive damages are not available against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e

---

[6]*Mariano v. Potter*, 2006 WL 907772 at *3 & n.6 (S.D. Ala. 2006).

hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). The plaintiffs acknowledge this rule but suggest their situation falls within an "exception" mentioned in *Fact Concerts*. (Doc. 22 at 7).

The passage on which the plaintiffs rely reads as follows: "It is perhaps possible to imagine an extreme situation where the taxpayers are directly responsible for perpetrating an outrageous abuse of constitutional rights." 453 U.S. at 267 n.29. The plaintiffs read this language as permitting an award of punitive damages against a municipality if its conduct is sufficiently outrageous, and they say the conduct of "elected and appointed officials" reaches this threshold. (Doc. 22 at 7-8). The text will not support the plaintiffs' interpretation.

Footnote 29 appears as part of the Supreme Court's discussion of the retributive function of punitive damages and how that function is ill-served by saddling taxpayers with punitive damages based, not on their own conduct, but on that of their officials. The footnote merely acknowledges that it is at least conceivable that a situation could arise in which the taxpayers themselves, and not merely their officials, engage in conduct sufficient to render them directly responsible for perpetrating the constitutional violation. This is the interpretation of footnote 29 commonly accepted among the Courts of Appeal that have considered the issue.[7] The plaintiffs do not suggest that the City's taxpayers themselves engaged in conduct making them directly responsible for the alleged

---

[7]*See Ciraolo v. City of New York*, 216 F.3d 236, 239-40 (2nd Cir. 2000); *New Jersey Coalition of Rooming and Boarding House Owners v. Mayor of Asbury Park*, 152 F.3d 217, 225 (3rd Cir. 1998); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1270 (7th Cir. 1984); *Heritage Homes, Inc. v. Seekonk Water District*, 670 F.2d 1, 2 (1st Cir. 1982).

The only known appellate decision arguably favoring the plaintiffs' interpretation is *Webster v. City of Houston*, 689 F.2d 1220 (5th Cir. 1982), which offered no textual analysis to support its construction. *Id*. at 1229. In his special concurrence, Judge Goldberg provided such an analysis and reached the same conclusion as all other Courts of Appeal addressing the matter. *Id*. at 1231 & n.1.

constitutional violation,[8] and their brief makes plain that they rely only on the conduct of "elected and appointed officials" to support punitive damages. That is a legally insufficient basis for such an award.

The complaint asserts a right to substantive due process under the Alabama Constitution as well as its federal counterpart. (Doc. 2, ¶ 70). The defendants object that the complaint fails to specify the textual source of this right but, as with their similar argument under Count Two, they fail to demonstrate that pleading rules require such precision. To the extent they suggest that no such right exists, they have failed to carry their initial burden of supporting the proposition. Therefore, the plaintiffs' failure to respond is not, as the defendants suggest, (Doc. 23 at 4), fatal to their claim.[9]

On the argument and authority presented, the motion to dismiss Count Three is due to be granted to the extent the claim seeks an award of punitive damages under federal law. In all other respects, the motion is due to be denied.

## IV. Inverse Condemnation.

Count Four alleges that the approval of the Fly Creek Village PUD and the changes to traffic flow constituted an inverse condemnation of the Property without just compensation, in violation of the Alabama Constitution and Alabama statute. (Doc. 2, ¶ 73).

The defendants first note that inverse condemnation under the state Constitution

---

[8]Courts have struggled to identify conduct that could satisfy footnote 29. *Compare Heritage Homes*, 670 F.2d at 2 (there must be "widespread knowledgeable participation by taxpayers" in the adoption of the unconstitutional position) *with Webster*, 689 F.2d at 1231 (Goldberg, J., specially concurring) (even a direct taxpayer vote to engage in the outrageous conduct, unless unanimous, would be problematical).

[9]The Alabama Constitution unquestionably offers some degree of substantive due process protection. *E.g., Alabama Power Co. v. Citizens of Alabama*, 740 So. 2d 341, 380-82 (Ala. 1999). Whether that protection extends to the circumstances of this case must await proper presentation by the parties.

requires "'direct physical injury to the property.'" (Doc. 6 at 13 (quoting *Jefferson County v. Southern Natural Gas Co.*, 621 So. 2d 1282, 1286-87 (Ala. 1993)). The plaintiffs concede that a "physical intrusion or taking is required," (Doc. 22 at 8), and it is evident that they have not alleged any physical intrusion upon, or injury to, the Property. Their constitutional claim therefore fails.

The defendants next argue that a mere breach of contract does not reflect an inverse condemnation and that the complaint presents no facts making it plausible that the City attempted to take the Property for public use without just compensation. (Doc. 6 at 13). The plaintiffs respond that their suit is for a regulatory taking. (Doc. 22 at 8). The defendants question whether Alabama law recognizes such a concept, (Doc. 23 at 8), but they do not attempt to meet their burden of showing that no such cause of action exists.

The defendants also insist that the plaintiffs "cannot show" a permanent deprivation. (Doc. 23 at 8). As previously noted, the question before the Court is not what the plaintiffs can ultimately show at trial or on motion for summary judgment, but what they must plead in order to state a claim on which relief can be granted. At any rate, assuming without deciding that the complaint must contain direct or inferential allegations of a final decision by the City (although the defendants do not so assert), the complaint does so. It alleges that the Fly Creek Village PUD was approved by the City "and ultimately enacted by an ordinance." (Doc. 2, ¶ 21). It also alleges that in March 2008 the City, through its governing council, approved the installation of a light at the intersection of Parker Road and Highway 98 and also authorized Kant to enter a contract to make the traffic flow changes around the Property (the bids having already been opened). (*Id*., ¶¶ 45, 51-52). The defendants have not suggested how these allegations could fail to allege final decisions by the City.

On the argument and authority presented, the motion to dismiss Count Four is due to be granted to the extent the claim is based on Section 235 of the Alabama Constitution. In all other respects, the motion is due to be denied.

## V.  Negligence.

The complaint alleges that the City "acted negligently, carelessly and unskillfully in its approval of the Fly Creek Village PUD and in its alteration of the traffic flows around the Property."  (Doc. 2, ¶ 76).

The defendants first argue that the complaint fails to allege that the neglect, carelessness or unskillfulness was that of an agent of the City acting in the line and scope of his agency.  (Doc. 6 at 14).  As with any artificial entity, the City can be liable only in consequence of the conduct of its agents, but the defendants cite no authority for the proposition that the complaint must articulate that commonplace on pain of dismissal.  At any rate, the complaint alleges that the competing PUD and the traffic changes were approved by the city council, (Doc. 2, ¶¶ 21, 51-52), which constitutes at least an inferential, if not direct, allegation of conduct by City agents in the line and scope of their agency.

The defendants also object that the complaint fails to allege that the City owed the plaintiffs a duty of care with respect to the challenged decisions.  (Doc. 6 at 14-15).  The existence of a duty of a care is an essential element of a cause of action for negligence, *e.g., Patrick v. Union State Bank*, 681 So. 2d 1364, 1367 (Ala. 1996), so that a direct or inferential allegation of such a duty is required in order to survive a motion to dismiss, yet the plaintiffs offer no response to the defendants' argument in this regard.  (Doc. 22 at 6-7).  Count Five, the substance of which is quoted above, contains no allegation that the City owed the plaintiffs a duty of care, nor does the Court's review of the complaint reveal any such allegation.[10]

On the argument and authority presented, the motion to dismiss Count Five is due to be granted.

---

[10]Absent authority or cogent argument to the contrary, which the plaintiffs do not provide, the Court is unprepared to assume that either objections to the defendants' conduct or characterizations of that conduct as negligent constitutes an inferential allegation that the defendants owed a duty of care.

## VI. Misrepresentation.

Count Six alleges that Kant misrepresented the City would approve the plaintiffs' request for a store as large as that approved for the Fly Creek Village PUD. (Doc. 2, ¶ 79). The defendants' only argument is that Kant is immune from suit. (Doc. 6 at 15-18).[11]

The defendants argue that Kant is clothed with state-agent immunity under the rule laid down in *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000). The plaintiffs respond that such immunity protects only state, not municipal, agents. (Doc. 22 at 9-10). However, the Alabama Supreme Court has ruled that "[i]mmunity applies to employees of municipalities in the same manner that immunity applies to employees of the State. ... *Ex parte Cranman, supra*, did nothing to alter this application." *City of Birmingham v. Brown*, 969 So. 2d 910, 916 (Ala. 2007) (applying *Cranman* to find a city employee immune).

The plaintiffs note that "[s]tate-agent immunity is unavailable where the governmental agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Cranman*, 792 So. 2d at 402 n.13; *accord Ex parte Butts*, 775 So. 2d 173, 178 (Ala. 2000). They assert that the complaint, by alleging that Kant's misrepresentations were made "wantonly [or] intentionally," (Doc. 2, ¶ 80), invokes one or more of these exceptions. (Doc. 22 at 10). The defendants declined to respond to this argument. (Doc. 23 at 8-9), so it stands unrebutted. Their tardy invocation of "the analyses of earlier [pre-*Cranman*] cases," (Doc. 23 at 9), comes too late,[12] and in any event likewise fails to address the exceptions to immunity.

---

[11]This argument nominally extends to Count Seven as well. (*Id*.). However, as discussed in Part VII, Count Seven asserts no state claim, and the defendants have not attempted to show that state-agent immunity captures federal claims.

[12]*See* note 6, *supra*.

On the argument and authority presented, the motion to dismiss Count Six is due to be denied.

## VII. Conspiracy.

Count Seven alleges that Kant conspired with the Cortes and fictitious defendants "for the purpose of depriving the [plaintiffs] of their vested rights in the Village North PUD approved by the City in 2002." (Doc. 2, ¶ 85). The complaint fails to state whether it is brought under state or federal law. (*Id*., ¶¶ 84-86).

The defendants assume the claim is brought under Alabama law and argue that it is defective because it fails to allege a completed underlying tort. (Doc. 6 at 18-19). The plaintiffs respond that their claim is not brought under state law but under Section 1983. (Doc. 22 at 14).[13] The defendants reply that the plaintiffs cannot on motion to dismiss identify the source of their conspiracy claim. This is a curious position, since the defendants' motion to dismiss depends on their own right to identify the source of the claim. At any rate, the argument that the claim must be dismissed for failure to identify its legal source was first raised on reply and thus comes too late.[14] Nor have the defendants attempted to support the proposition that a failure to identify its legal source subjects a claim to dismissal.

On the argument and authority presented, the motion to dismiss Count Seven is due to be granted to the extent the claim is based on Alabama law. In all other respects, the motion is due to be denied.

## CONCLUSION

For the reasons set forth above, the motion to dismiss Count Two is **granted** to the

---

[13]*See generally Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008) (discussing conspiracy actions under Section 1983).

[14]*See* note 6, *supra*.

extent the claim is based on discriminatory zoning decisions challenged under the United States Constitution; the motion to dismiss Count Three is **granted** to the extent the claim seeks an award of punitive damages under federal law; the motion to dismiss Count Four is **granted** to the extent the claim is based on Section 235 of the Alabama Constitution; the motion to dismiss Count Five is **granted**; and the motion to dismiss Count Seven is **granted** to the extent the claim is based on Alabama law. In all other respects, the motion to dismiss is **denied**.

DONE and ORDERED this 12th day of August, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE